[No. 9747.  Department Two.  December 27, 1911.]

WESLEY F. COLE, *Appellant*, v. SPOKANE GAS AND FUEL COMPANY, *Respondent*.[1]

MASTER AND SERVANT—SAFE APPLIANCES—SIMPLE INSTRUMENTS—ASSUMPTION OF RISKS.  The evidence is insufficient to sustain a re-covery in an action by a stoker for injuries sustained in the fall of a pan he was carrying by reason of alleged defects in the handle through the loss of rivets, where there was no evidence that such condition impaired its safety, the plaintiff's evidence showed that the handles slipped from his hand, and that from constant use, he had equal means of knowledge as to any defects in the handle; since it was an implement of simple construction which does not come within the rule of safe instrumentalities.

MASTER AND SERVANT—NEGLIGENCE—PRESUMPTION.  The doctrine of *res ipsa loquitur* does not go to the extent of raising a presump-tion of negligence from the mere fact of an injury, but only that certain facts, when established, speak negligence.

Appeal from a judgment of the superior court for Spo-kane county, Huneke, J., entered June 21, 1911, upon with-drawing the case from the consideration of the jury, dismiss-ing an action for injuries sustained by a stoker employed in a gas plant.  Affirmed.

*W. H. Plummer* and *Henry Jackson Darby*, for appellant.

*Post, Avery & Higgins*, for respondent.

CHADWICK, J.—Appellant was a stoker in the employ of respondent.  He brought this action to recover compensa-tion for injuries which he says resulted from respondent's negligence.  The case is predicated upon the legal principle

[1]Reported in 119 Pac. 831.

that it is the duty of an employer to provide the servant such safe and sufficient appliances or instrumentalities as are reasonably calculated to insure the safety of the servant, and to maintain them in a reasonable state of repair. Appellant was forty-three years old at the time he was injured, and had performed common labor for many years. He had worked as a stoker for respondent from April 6, 1910, to December 21, 1910, the day he was injured. He with another carried coke along a line or series of retorts, taking it out of one and putting it into another as the process of manufacture required. The vehicle in which the coke was carried was an iron pan with two handles projecting lengthwise from the ends, so that a man could walk between them after the fashion of handling a wheelbarrow. While thus engaged, appellant dropped the pan. It fell upon and fractured his ankle. The specific omission of duty on the part of the employer, as it is alleged, is this: that one of the handles of the pan gave way because some of the rivets were out of the handle, so that it had become loose, and but for this, the accident would not have occurred. At the close of appellant's case, the court took the case from the jury, and thereafter entered a judgment in favor of defendant.

A careful review of the evidence convinces us that there can be no doubt of the correctness of the court's judgment. There is no evidence to sustain counsel's theory that the accident occurred because some of the rivets attaching the handle to the pan were out. Appellant's own testimony does not sustain this theory. He says that the right hand handle slipped in his hand; that he made a "kind of a grab," and that he "grabbed for a new hold," when he lost it altogether. Appellant had used the pan for some time before the accident happened, and it was used for two or three days thereafter. It is not shown by any evidence that the loss of the rivets in any way impaired the usefulness of the instrument. Appellant admits that his gloves were wet, and it is as likely, or more likely, from the evidence that the accident

happened from this cause rather than any defect in the pan. Or, if it be held that there was a defect, its character was such that plaintiff, who was handling the pan many times a day, would be charged with notice of it, as well as the duty of taking it to the blacksmith who was kept upon the premises by respondent to do all needful repairing. The master could have no more knowledge of such a defect than the servant possessed, for the instrumentality was so simple that it was the duty of the servant to know its condition, and either call the attention of the master to it or protect himself against the possibility of injury. The rule seems well established that an implement of simple structure, presenting no complicated question of power, motion or construction, and intelligible in all of its parts to the dullest intellect, does not come within the rule of safe instrumentalities, for there is no reason known to the law why a person handling such instrument and brought in daily contact with it should not be chargeable equally with the master with a knowledge of its defects. *Cahill v. Hilton*, 106 N. Y. 512, 13 N. E. 339; *Marsh v. Chickering*, 101 N. Y. 396, 5 N. E. 56; *McMillan v. Minetto Shade Cloth Co.*, 117 N. Y. Supp. 1081; *Wachsmuth v. Shaw Elec. Crane Co.*, 118 Mich. 275, 76 N. W. 497; *O'Brien v. Missouri, K. & T. R. Co.*, 36 Tex. Civ. App. 528, 82 S. W. 319; *Holt v. Chicago, M. & St. P. R. Co.*, 94 Wis. 596, 69 N. W. 352; *Stirling Coal & Coke Co. v. Fork*, 141 Ky. 40, 131 S. W. 1030; *Jenney Elec. L. & P. Co. v. Murphy*, 115 Ind. 566, 18 N. E. 30.

The doctrine of *res ipsa loquitur* is invoked. Under that doctrine it has been held that certain facts, when established, will speak negligence and put the burden of disproving it upon the party charged. It has never been carried to the extent of raising a presumption of negligence from the mere fact of injury. It is the facts from which the injury resulted and not the injury, that sets the doctrine in motion.

Judgment affirmed.

DUNBAR, C. J., CROW, MORRIS, and ELLIS, JJ., concur.